**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Nicholas Valdez,

          Plaintiff,

v.

Delta Electric & Air LLC,

          Defendant.

No. CV-20-01981-PHX-DWL

**ORDER**

      Plaintiff Nicholas Valdez sued his former employer, Delta Electric & Air LLC ("Defendant"), for discrimination and retaliation in violation of the Americans with Disabilities Act ("ADA") and the Arizona Civil Rights Act ("ACRA").  Now pending before the Court is Defendant's motion for summary judgment, to which Plaintiff (who is now proceeding *pro se*) failed to respond.  For the following reasons, Defendant's motion is granted.

## BACKGROUND

I.    <u>Factual History</u>

      The following facts are derived from the evidence attached to Defendant's motion for summary judgment and other materials in the record.  Because Plaintiff did not respond to Defendant's motion, these facts are undisputed.  *Ballard v. Terros, Inc.*, 2021 WL 1597892, *4 (D. Ariz. 2021) ("[I]n the summary judgment context, the opposing party's failure to respond to a fact asserted in a summary judgment motion merely permits a court to consider the fact undisputed for purposes of the motion.  Rule 56 does not, in contrast,

condone summary judgment by default.") (cleaned up).  The Court only recites those facts necessary to reach its conclusion.

On May 19, 2017, Plaintiff applied to be an electrician for Defendant.  (Doc. 27-1 at 7-8.)  Plaintiff began working for Defendant that same month.  (*Id.* at 35.)  Plaintiff was assigned to a construction project called "The Enclave at Chandler Senior Living Facility," or "the Project."  (*Id.*)  Richard Horvatich served as the Project's foreperson and supervised Plaintiff.  (*Id.*)

As part of his application, Plaintiff certified that he understood the essential functions of a construction job and that he could perform them.  (*Id.* at 4.)  However, it quickly became clear to Horvatich that Plaintiff lacked the skills and knowledge to perform the basic duties of an electrician.  (*Id.* at 35-36.)  Plaintiff was demoted to simpler and simpler tasks until he was finally assigned to perform manual labor and clean-up tasks because he "appeared to lack the skill and knowledge expected of an Electrician in the position that [Defendant] hired him for."  (*Id.* at 36.)

In early June 2017, during an inspection of the Project's job site, Horvatich discovered two ladders that were defective because of broken hinges and no longer in safe working condition.  (*Id.*)  These ladders were inscribed with the names "Isaiah" and "Hector."  (*Id.* at 37.)  Horvatich instructed Plaintiff and others to dispose of the ladders immediately, but only the "Isaiah" ladder was properly disposed of.  (*Id.*)

On June 14, 2017, Plaintiff climbed the "Hector" ladder to drill holes for electrical cabling, but the ladder broke underneath him and he fell to the ground.  (*Id.* at 39, 70-71, 94-95.)  Plaintiff fell from a height of no more than four feet.  (*Id.* at 40.) Immediately before the accident, Plaintiff was "walking" the ladder—a practice prohibited by Defendant for safety reasons—which involves a person straddling the top of the ladder and using its legs like stilts to move from one location to another.  (*Id.* at 39-40.)

Plaintiff immediately reported the incident to Horvatich.  (*Id.* at 37, 72.)  Horvatich allowed Plaintiff to leave and seek medical attention.  (*Id.* at 37, 73.)  Following an urgent care visit, Plaintiff was given temporary work restrictions.  (*Id.* at 85.)

Upon returning to work, Plaintiff provided Horvatich with a list of his new restrictions, and they agreed that Plaintiff should take leave until he received more information from a follow-up appointment.   (*Id.* at 37, 76-77.)   At the follow-up appointment on June 17, 2017, Plaintiff was cleared to return to work without restrictions. (*Id.* at 36, 77-78, 97.)

Plaintiff returned to work on June 19, 2017.  (*Id.* at 37.)  Despite being cleared to return to regular duty, he asked Horvatich to assign him to a crew performing "easy" tasks. (*Id.* at 37-38, 79).  That crew is called the "finishing" crew, which performs tasks such as placing chandeliers and other low-effort jobs.  (*Id.* at 38.)  But there was little finishing work available at Plaintiff's assigned site, and given Plaintiff's unconditional medical release and the fact that Plaintiff was not hired to do finishing work, Horvatich asked Plaintiff to perform the duties for which he was hired.  (*Id.* at 38, 79-81.)

Plaintiff worked for Defendant for another month.  (*Id.* at 38.)  During that time, Plaintiff never spoke with a supervisor about disability accommodations and appeared to work without the need for an accommodation.  (*Id.*)

On July 31, 2017, Plaintiff texted Horvatich to request a day off due to "sciatic nerve pain," which Plaintiff had not complained of previously.  (*Id.*)  Horvatich granted the request.  (*Id.*)  Plaintiff texted Horvatich again the following day, complaining that he could not stand straight or bend over, and Horvatich excused him again.  (*Id.*)  Plaintiff texted Horvatich again the following day to ask for the day off to attend a court hearing, and Horvatich excused him again.  (*Id.*)  Finally, Plaintiff texted Horvatich on August 3, 2017 to express that he felt physically unable to work and planned to see a chiropractor.  (*Id.*) After that interaction, Plaintiff never (1) returned to work, (2) provided more medical documentation, or (3) made an accommodation request.  (*Id.* at 38-39.)  Defendant has no record of any accommodation requests or any medical documentation beyond paperwork from Plaintiff's June 2017 urgent care appointments.  (*Id.* at 4.)

Horvatich investigated the events of June 14, 2017, as is his usual practice following a workplace injury.  (*Id.* at 39.)  During the investigation, he discovered that Plaintiff had

used the ladder he had previously directed Plaintiff to throw away, that Plaintiff had been "walking" the ladder before falling, and that Plaintiff embellished the incident by claiming he fell from a circumstantially impossible height. (*Id.* at 39-40.) Although Horvatich wanted to terminate Plaintiff immediately, Defendant's field supervisor asked Horvatich to wait until a replacement could be found. (*Id.* at 40.) After Plaintiff stopped communicating with Defendant, Defendant terminated Plaintiff on August 11, 2017, for failing to follow directions and providing a dishonest report about his accident. (*Id.*)

II.    Procedural History

On October 23, 2017, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging that Defendant had refused to grant reasonable accommodations and had terminated Plaintiff on the basis of his disability. (Doc. 1-2 at 2.)

On April 17, 2020, the EEOC found reasonable cause to believe Defendant's "practice of not allowing employees to return to work unless they are free from medical restrictions violates the ADA" but made "no findings regarding any other allegation made in the charge." (Doc. 1-4 at 2.)[1]

On July 20, 2020, the EEOC issued a Right to Sue Letter to Plaintiff. (Doc. 1 ¶ 4; Doc. 1-3 at 2).

---

[1]    The complaint alleges that the EEOC's determination letter "is enough to create issues of material fact that preclude any resolution of the Defendant on summary judgment." (Doc. 1 ¶ 31.) "An EEOC letter is a highly probative evaluation of an individual's discrimination complaint. . . . Such letters, however, are not homogenous products; they vary greatly in quality and factual detail." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1283 (9th Cir. 2000). In *Coleman*, the Ninth Circuit analyzed a letter that simply stated, "[t]he Commission's investigation finds reasonable cause to believe that [Defendant] has violated the [ADEA]. The Commission further finds that employees over the age of 40, as a class, were laid off in violation of [ADEA]." *Id.* at 1283-84. The court explained that "[i]t is impossible from this letter to know what facts the EEOC considered and how it analyzed them. Examining similarly conclusory EEOC letters, other circuits have concluded that when the letters only report 'bare conclusions,' they have little probative value. If the EEOC's suing is insufficient to create a genuine issue of material fact, then, a priori, a conclusory EEOC reasonable cause letter, at least by itself, does not create an issue of material fact." *Id.* at 1284. Here, Plaintiff cites an EEOC statement that, like in *Coleman*, (1) identifies an offending practice and (2) explains that the EEOC had reasonable cause to believe the practice violates the ADA. Without more—for instance, an elaboration from either Plaintiff or the EEOC identifying the facts supporting this conclusion—this conclusory statement cannot create a genuine issue of material fact in this case.

- 4 -

On October 12, 2020, Plaintiff, through counsel, initiated this action.  (Doc. 1.)  The complaint asserts four claims.  (*Id.*)  Count One is a claim of discrimination in violation of the ADA (*id.* ¶¶ 39-52), Count Two is a claim of retaliation in violation of the ADA (*id.* ¶¶ 53-59), Count Three is a claim of discrimination in violation of the ACRA (*id.* ¶¶ 60-69), and Count Four is a claim of retaliation in violation of the ACRA (*id.* ¶¶ 70-74).

On March 1, 2021, Plaintiff's counsel filed a motion to withdraw.  (Doc. 19.)

On March 2, 2021, the Court granted the motion to withdraw.  (Doc. 20.)

On January 28, 2022, Defendant filed the pending motion for summary judgment.  (Doc. 27.)

The deadline for Plaintiff to respond to the summary judgment motion was February 28, 2022, *see* LRCiv 56.1(d), but Plaintiff did not file a response.  Plaintiff did, however, subsequently file a notice of change of address.  (Doc. 29.)

## DISCUSSION

I.   <u>Legal Standard</u>

"The court shall grant summary judgment if [a] movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A fact is 'material' only if it might affect the outcome of the case, and a dispute is 'genuine' only if a reasonable trier of fact could resolve the issue in the non-movant's favor."  *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014).  The court "must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inference in the nonmoving party's favor."  *Rookaird v. BNSF Ry. Co.*, 908 F.3d 451, 459 (9th Cir. 2018).  "Summary judgment is improper where divergent ultimate inferences may reasonably be drawn from the undisputed facts."  *Fresno Motors*, 771 F.3d at 1125.

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  "If . . . [the] moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Id.* at 1103.

"If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Id.*  There is no issue for trial unless enough evidence favors the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* at 249-50.  At the same time, the evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.  "[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Id.* at 254.  Thus, "the trial judge's summary judgment inquiry as to whether a genuine issue exists will be whether the evidence presented is such that a jury applying that evidentiary standard could reasonably find for either the plaintiff or the defendant." *Id.* at 255.

II.    <u>Count One: ADA Discrimination</u>

To establish a *prima facie* case of discrimination under the ADA, a plaintiff must show (1) he is a disabled person under the ADA, (2) he is a "qualified" individual, and (3) he suffered an adverse employment action because of his disability.  *Bates v. UPS*, 511 F.3d 974, 988 (9th Cir. 2007).

Defendant argues that Plaintiff's ADA discrimination claim fails because (1) Plaintiff never alleged a disability or notified Defendant of one (Doc. 27 at 9-11), (2) Plaintiff failed to provide Defendant proper notice of his disability or need for accommodation (*id.* at 11-12), (3) Plaintiff could not perform the essential functions of the

job (*id.* at 12-13), (4) Plaintiff never requested a reasonable accommodation (*id.* at 13-15), and (5) Defendant terminated Plaintiff for legitimate reasons (*id.* at 15-17).

"A 'qualified individual' is an individual with a disability who, *with or without reasonable accommodation*, can perform the *essential functions* of the employment position that such individual holds or desires.  Essential functions are fundamental job duties of the employment position.  If a disabled person cannot perform a job's 'essential functions' (even with a reasonable accommodation), then the ADA's employment protections do not apply."  *Bates*, 511 F.3d at 989 (cleaned up).  The Court need not determine whether Plaintiff was disabled under the meaning of the ADA because, even if so, Plaintiff has failed to establish that he was able to perform the essential functions of his position with or without reasonable accommodation.

To determine whether a plaintiff can perform a job's essential functions, the "court first examines whether the individual satisfies the requisite skill, experience, education and other job-related requirements of the position.  The court then considers whether the individual can perform the essential functions . . . with or without a reasonable accommodation.  Although [plaintiff] retains the burden of proof in making her prima facie case, [defendant] has the burden of production in establishing what job functions are essential as much of the information which determines those essential functions lies uniquely with the employer."  *Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012) (cleaned up).

Here, Defendant proffers a "description of essential job functions" that its employees are required to perform on construction projects.  (Doc. 27-1 at 10.)  Those functions include (1) using safety equipment, (2) handling and using a shovel, (3) moving around in different terrain, (4) climbing a tall ladder without difficulty, (5) manipulating heavy objects, (6) working long hours, and (7) distinguishing between certain colors.  (*Id.*)  Defendant also proffers testimony that "Plaintiff struggled with understanding the concept of connecting wires to a 'home' service box, repeatedly made mistakes at different points of the process, and seemingly just attached wires wherever he thought they fit as opposed

to their correct location. . . .  Plaintiff ruined a dozen puck lights due to improper installation. . . .  Installation of light fixtures and running wires to service boxes are simple, common tasks for even a novice Electrician."  (Doc. 27-1 at 35-36.)

Although Defendant's list of essential job functions does not explicitly include electrical skills, that list is not necessarily exclusive.  Under 29 C.F.R. § 1630.2(n)(3), "[e]vidence of whether a particular function is essential includes, but is not limited to[,] [t]he employer's judgment as to which functions are essential; . . . written job descriptions; . . . [t]he consequences of not requiring the incumbent to perform the function; [and t]he current work experience of incumbents in similar jobs."  *Id.*  *See also Bates*, 511 F.3d at 989 (citing 29 C.F.R. § 1630.2(n)(3) with approval).  Defendant proffers undisputed testimony that installing light fixtures and running wires to service boxes are elementary, expected tasks for novice electricians, which is some evidence of (1) the employer's judgment and (2) the work experience of incumbents in similar jobs.  Thus, with no response from Plaintiff, Defendant has established that installing light fixtures and running wires to service boxes are essential functions of an electrician position.  (This conclusion also comports with common sense—the ability to perform *some* electrical work must be an essential function of an electrician's role.)  And on this record, Defendant has established that Plaintiff was incapable of performing even simple electrical work before his injury.

Defendant's undisputed evidence, which establishes that Plaintiff could not perform electrical work with or without a reasonable accommodation, "negat[es] an essential element of the nonmoving party's claim."  *Nissan Fire*, 210 F.3d at 1102.  Because Plaintiff declined to respond to the motion for summary judgment, he has failed "to produce enough evidence to create a genuine issue of material fact," and thus Defendant "wins the motion for summary judgment" on this claim.  *Id.* at 1103.  This makes it unnecessary to decide whether Defendant is also entitled to summary judgment on Count One for the additional reasons identified in its motion.

…

…

III.     Count Two: ADA Retaliation

To establish a *prima facie* case of retaliation, a plaintiff must show (1) involvement in a protected activity, (2) an adverse employment action, and (3) a causal link between the two.  *Coons v. Sec'y of U.S. Dep't. of Treasury*, 383 F.3d 879, 887 (9th Cir. 2004).  "Once the plaintiff establishes a *prima facie* case, the employer has the burden to present legitimate reasons for the adverse employment action.  If the employer carries this burden, and plaintiff demonstrates a genuine issue of material fact as to whether the reason advanced by the employer was a pretext, then the retaliation case proceeds beyond the summary judgment stage."  *Id.*

It is seemingly undisputed that Plaintiff's termination was an adverse employment action.  But Defendant argues that Plaintiff's ADA discrimination claim fails because, *inter alia*, Plaintiff never requested a reasonable accommodation.  (Doc. 27 at 17.)

The Court agrees.  The complaint alleges that Plaintiff "engaged in protected activity by requesting a reasonable accommodation" (Doc. 1 ¶ 55), and requesting a reasonable accommodation is a protected activity under the ADA.  *Coons*, 383 F.3d at 887. However, this case is no longer at the pleading stage, so the question now is whether a reasonable juror could find that Plaintiff actually did engage in protected activity.  On this record, the answer is no.  Because Plaintiff did not respond to the motion for summary judgment, the Court must speculate about the specific "protected activity" that purportedly led to his termination.  Plaintiff presumably believed his post-injury request for "easy" tasks, which Horvatich denied, was a request for reasonable accommodation.

Under the ADA, a plaintiff bears[2] the initial responsibility of informing his employer of a disability or any limitations caused by that disability and the need for accommodation.  *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1114 (9th Cir. 2000) (en banc), *vacated on other grounds by U.S. Airways, Inc. v. Barnett*, 535 U.S. 391 (2002).  "An

---

[2]     If an employer recognizes that the employee needs an accommodation but the employee cannot request it because of a disability, the employer must still engage in an interactive process with the employee to determine the appropriate accommodation. *Zivkovic v. S. California Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002).  Plaintiff does not allege that he was unable to request an accommodation, so the burden was on him to do so.

employee is not required to use any particular language when requesting an accommodation but need only inform the employer of the need for an adjustment due to a medical condition." *Zivkovic v. Southern California Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002). *Accord Jones v. Nationwide Life Ins. Co.*, 696 F.3d 78, 89 (1st Cir. 2012) (holding a plaintiff must provide notice of a condition and explain a causal connection between the condition and the accommodation).

Plaintiff returned to work with an unconditional medical release on June 19, 2017, shared the full medical release with Horvatich, but still orally requested[3] to be assigned to "easy" tasks. The record does not reflect that Plaintiff mentioned any existing injury when requesting those easy tasks. Accordingly, Plaintiff failed both the disclosure and causation prongs of a reasonable accommodation request: as far as Horvatich knew, Plaintiff was perfectly healthy and his request was unrelated to an earlier, now-healed injury. Put another way, Plaintiff failed to disclose that he was experiencing a *medical condition* and that his accommodation request was *due to* that condition. On this record, no reasonable juror could find otherwise. This makes it unnecessary to decide whether Defendant is also entitled to summary judgment on Count Two for the additional reasons identified in its motion.

IV.   Counts Three And Four: ACRA Discrimination And Retaliation

Plaintiff's ACRA claims in Counts Three and Four fail for the same reasons as his ADA claims in Counts One and Two. *See, e.g.*, *Whitmire v. Wal-Mart Stores Inc.*, 359 F. Supp. 3d 761, 792 (D. Ariz. 2019) ("[T]he ADA standards for disability discrimination claims apply to similar claims brought under the Arizona Civil Rights Act, as the ACRA is modeled after federal employment discrimination laws.") (citations omitted); *April v. U.S. Airways, Inc.*, 2011 WL 488893, *10 (D. Ariz. 2011) ("Even if the ACRA claim were

---

[3]      Plaintiff was not obligated to provide his request in writing. He was entitled to use "plain English" and did not have to mention the ADA or use the phrase "reasonable accommodation." EEOC Enforcement Guidance No. 915.002, *Enforcement Guidance on Reasonable Accommodation and Undue Hardship under the ADA* https://www.eeoc.gov/laws/guidance/enforcement-guidance-reasonable-accommodation-and-undue-hardship-under-ada (last visited Aug. 5, 2022). *See also Barnett*, 228 F.3d at 1112 (citing the Compliance Manual).

timely filed, it should be denied on the merits on the same grounds as her ADA claims as set forth above."); *Shulock v. City of Tucson*, 2010 WL 2720839, *6 n.3 (D. Ariz. 2010) ("The Court's ADA and Title VII analysis applies to Plaintiff's ACRA claim.  If Plaintiff's claim does not survive under federal law, summary judgment is proper as to his state law claim as well.").

Accordingly,

**IT IS ORDERED** that Defendant's motion for summary judgment (Doc. 27) is **granted**.  The Clerk of Court shall enter judgment accordingly and terminate this action.

Dated this 9th day of August, 2022.

_____
Dominic W. Lanza
United States District Judge